UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENJAMIN LAX, et al.,<br><br>                Plaintiffs,<br><br>      v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>                Defendants. | Civil Action 04-01940 (HHK) |

**MEMORANDUM OPINION**

Benjamin Lax, a minor, by his parents and next friends, Michelle Lax and Kirklin Frazier, and twenty-eight other minors and their parents and next friends, bring this suit against the District of Columbia and the District of Columbia Public Schools ("DCPS") for reimbursement of attorneys' fees and costs incurred in pursuing administrative complaints against DCPS under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Before the court is plaintiffs' motion for summary judgment [#16]. Upon consideration of plaintiffs' motion, the opposition thereto, and the record of the case, the court concludes that the motion must be granted in part.

**I. BACKGROUND INFORMATION**

Plaintiffs, twenty-nine students with disabilities and their parents and next friends, were all prevailing parties in due process hearings or settlement agreements under the IDEA.[1] In their complaint, plaintiffs claimed that $286,409.07 was still owed in attorneys' fees and costs, which,

---

[1] DCPS does not dispute that each plaintiff in this case is a prevailing party. *See* Pls.' Statement of Material Facts not in Dispute ¶¶ 2–3.

due to partial payment by DCPS, had dropped to $164,649.11 at the time plaintiffs moved for summary judgment, Pls.' Mot. for Summ. J. ("Pls.' Mot.") at 2, and now stands at $153,201.49. Pls.' Reply, Ex. 1, at 2.  DCPS contests various aspects of plaintiffs' fee request.

## II.  ANALYSIS

### A.  Legal Standard

IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i).  Additionally, "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id*. § 1415(i)(3)(C).

In order for plaintiffs to recover attorneys' fees, they "must first demonstrate that . . . each of them is a prevailing party in the litigation." *Watkins v. Vance*, 328 F. Supp. 2d 23, 25 (D.D.C. 2004).  After plaintiffs cross this threshold, the court must determine whether the fees sought are reasonable; "[t]he most useful starting point for determining the amount of an appropriate fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Blum v. Stenson*, 465 U.S. 886, 888 (1984).  To prove the reasonableness of counsels' rates, plaintiffs must submit information about "the attorneys' billing practices and hourly rate, the attorneys' skill and experience (including the number of years that counsel has practiced law), the nature of counsel's practice as it relates to this kind of litigation and the prevailing market rates in the relevant community." *Watkins*, 328 F. Supp. 2d at 26.

Plaintiffs also have the burden of demonstrating that the number of hours expended on particular tasks is appropriate. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1337 (D.C. Cir. 1982) (Tamm, J., concurring); *Holbrook v. Dist. of Columbia*, 305 F. Supp. 2d 41, 45 (D.D.C. 2004). This burden is satisfied by "submitting invoices that are sufficiently detailed to 'permit the District Court to make an independent determination whether or not the hours claimed are justified.'" *Kaseman v. Dist. of Columbia*, 329 F. Supp. 2d 20, 26 (D.D.C. 2004) (quoting *Concerned Veterans*, 675 F.3d at 1327). The invoices "need not present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Concerned Veterans*, 675 F.2d at 1327 (internal quotations omitted). Rather, the "touchstone inquiry" is whether the charges presented are "reasonable." *Holbrook*, 305 F. Supp. 2d at 45.

Once the plaintiffs have provided such information, a presumption arises that the number of hours billed and the hourly rate are reasonable. *Watkins*, 328 F. Supp. 2d at 26. The burden then shifts to the defendants to rebut the plaintiffs' claim of reasonable hours and rates, which requires that they "provide specific contrary evidence" indicating that a lower rate or a lower tally of hours billed would be appropriate. *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1109–10 (D.C. Cir. 1995).

**B. Plaintiffs' Fee Request**

Plaintiffs state that they have submitted "timely and sufficiently-alleged claims" for fees and costs, including a chart of amounts due and the decisions of the proceedings from which the fees and costs arose. Pls.' Mot. at 2. Plaintiffs also file a declaration from one of their attorneys attesting to the reasonableness of the fees and costs being sought, indicating that the

qualifications of plaintiffs' counsel have been established in numerous actions litigated before this court, *id.*, Ex. 2 ("Eig Decl.") ¶ 6 (citing *Moore v. Dist. of Columbia*, 674 F. Supp. 901, 905–06 (D.D.C. 1987)), and that counsel have also been recognized as "a leading [IDEA] firm in the district." *Id.* (citing *Kattan v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (alterations in original)). Plaintiffs' counsel also submitted detailed billing records for each of the individual plaintiffs represented in this action, with line entries for every charge indicating the attorney or legal assistant responsible, the date, and the amount of time expended. These entries also provide a description, in varying levels of detail, of the billed activity. Compl., Exs. 3B–40B.[2]

Both the court and DCPS are familiar with plaintiffs' counsel and their billing rates, and the court finds that they have sufficiently established their experience and qualifications in the area of IDEA litigation. Furthermore, applying the standard set forth in *Hensley* and *Blum*, the court notes that, as a general matter, plaintiffs' attorneys have successfully met their initial burden by submitting sufficiently detailed invoices. However, there are a number of individual billing entries that plaintiffs' counsel have failed to adequately support, to which DCPS raises meritorious objections. The court considers each of the DCPS's objections in turn and concludes that some of these entries must be deducted from the total fees and costs awarded to plaintiffs.

---

[2] In their motion for summary judgment, plaintiffs incorporate the exhibits attached to their complaint.

**C. Defendants' Objections to Fee Request**

*1. Expert Fees*

First, DCPS objects to plaintiffs' attempts to recover costs associated with experts and expert witnesses. Defs.' Opp'n at 3–4.[3] To support this objection, DCPS cites *Goldring v. Dist. of Columbia*, 416 F.3d 70, 71 (D.C. Cir. 2005), which held that "the IDEA precludes the awarding of expert witness fees as part of a prevailing party's costs." In response, plaintiffs suggest that the holding in *Goldring* is not controlling because, at the time they filed their reply brief, the mandate had yet to issue due to the court of appeal's consideration of possible *en banc* review. Pls.' Reply at 2. Whatever doubts existed at the time plaintiffs filed their reply brief as to the applicability of *Goldring* have since evaporated; the mandate has issued in *Goldring*, and the Supreme Court has agreed that the IDEA fee-shifting provision does not cover expert fees. *See Arlington Central Sch. Dist. Bd. of Educ. v. Murphy*, No. 05-18, slip op. at 8, 548 U.S. __ (2006) (holding that "the terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants."). Accordingly, the court will deduct all expenses attributable to experts and consultants, which total $33,846.07, from plaintiffs' fee award.[4]

---

[3] Defendants filed an amended opposition on November 13, 2005. All references in this memorandum opinion are to the amended version of defendants' opposition.

[4] Plaintiffs sought $11,007.78 for their representation of Gabriel Rogoff, of which approximately 40% was due to expert costs. Compl., Ex. 32B. To date, DCPS has reimbursed $3,800 of this amount, but has failed to indicate whether those reimbursements were for attorney's fees, attorney's costs, or expert costs. Allocating DCPS's payment on a pro-rata basis across the three categories of payments, the court determines that $2,842.10 of the outstanding balance for Rogoff is attributable to expert and consultants.

### *2. Claims Relating to IEP meetings and related activities*

Plaintiffs' counsel seeks reimbursement for time spent at meetings and other activities dedicated to the development of individualized education programs ("IEPs") for seven plaintiffs. DCPS objects to plaintiffs' billing for these activities, noting that the IDEA clearly prohibits reimbursement of such expenses.  *See* 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorneys' fees may not be awarded relating to any meeting of the IEP team unless such meeting is convened as a result of an administrative proceeding or judicial action").  Because plaintiffs have provided no indication that their IEP-related charges were convened as a result of an administrative proceeding or judicial action, the court will further reduce plaintiffs' attorneys' fees by $8,540.00, the sum of the unjustified charges for these seven plaintiffs.[5]

### *3. Claims of Reimbursement for Work Done by Certain Individuals*

Next, DCPS contends that plaintiffs have failed to justify the charges for work done by individuals other than Michael Eig and Hayley Iseman.  Specifically, defendants claim that neither the position nor the qualification of four individuals—Lauren Moynihan, Adam Finkelstein, Lisa Noik, and Patti Johnston—have been provided in plaintiffs' motion or in the exhibits attached thereto.  Defs.' Opp'n at 5–6.  Accordingly, DCPS requests a fifty percent reduction of the reimbursable amounts attributable to these individuals.  For the following reasons, the court denies plaintiffs' request.

---

[5] DCPS objects to the IEP-related expenses for Lucia Basterra, Peter Berg, Brandon Holmes, Jack Orloff, Emma Safford, Esther Werner, and Allison Wheeler.  The court reviewed the time sheets submitted for each of these seven plaintiffs when determining the total amount to be deducted from plaintiffs' fee request for time spent on IEP-related activities.

First, contrary to defendants' suggestion, Moynihan's qualifications are set forth in Eig's declaration. Eig Decl. ¶ 5. As those qualifications are similar in many regards to Iseman's, whose rates defendants do not challenge, the court concludes that Moynihan's rates are similarly reasonable.

Second, based on the activities for which they seek reimbursement, the remaining three individuals are apparently paralegals or legal assistants employed by plaintiffs' counsel. In a similar case where plaintiffs did not justify rates for legal assistants by submitting affidavits detailing their experience and education, the D.C. Circuit reduced the requested rates for those assistants by twenty-five percent. *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004); *see also United States ex rel. Averback v. Pastor Med. Assocs.*, 224 F. Supp. 2d 342, 356 (D. Mass. 2002) (reducing attorneys' fees because of "the complete and utter lack of evidentiary support underlying their claimed hourly rate."). As in *Role Models America*, plaintiffs here have not justified the rates at which Finkelstein, Noik, and Johnston billed for their time.[6] Accordingly, the court will reduce the total fees incurred by these three individuals by twenty-five percent, for a reduction of $132.82.

### 4. *Objections to "Unreasonable Charges"*

DCPS also raises objections, on four different grounds, to plaintiffs' billing for activities that defendants claim are unreasonable. First, DCPS opposes payment for "excessive billing" for particular activities that they suggest should have been accomplished more quickly. Second, DCPS opposes payment for travel time. Third, DCPS cites twelve instances where plaintiffs

---

[6] Adam Finkelstein, Lisa Noik, and Patti Johnston all billed hourly rates of $125 per hour for work with regard to the following plaintiffs: John Casasco, Brandon Holmes, Collins Jensen, Julia Jensen, and Keith Murfee. *See* Compl., Exs. 10B, 17B, 19B, 20B, 29B.

seek reimbursement for activities remote in time from the due process hearings involved, suggesting that this remoteness counsels against reimbursement. Finally, DCPS identifies one charge for which plaintiffs are accused of unjustifiably duplicating their time. The court addresses, and rejects, each of these arguments below.

      a. Excessive billing

In their opposition, DCPS cites to seven instances where plaintiffs' counsel is alleged to have spent "excessive time" in representing their clients. Defs.' Opp'n at 6. For example, defendants object to Eig spending 3.5 hours in preparation for the due process hearing on February 9, 2004, for Lucia Basterra. Def.'s Objections at 2. Plaintiffs, in response, insist that the times billed in preparing for hearings and otherwise representing their clients was not excessive given that "the time charged represents the time that it took to win each case." Pls.' Reply at 11.

Notably, defendants never explain why they believe the time spent was unreasonable or excessive, instead presenting nothing more than *ipse dixit* in support of their position. As the D.C. Circuit has noted, an opposing party does not meet his burden by simply stating, "for example, that the hours claimed are excessive and the rates submitted too high." *Concerned Veterans*, 675 F.2d at 1337–38 (Tamm, J., concurring). Despite the absence of specific argument in support of DCPS's position, the court nonetheless carefully reviewed the seven tasks to which defendants object and finds that the time allocated to each task was reasonable.

      b. Travel reimbursement

Defendants next argue that travel time should be reimbursed at a reduced rate, citing cases from outside this jurisdiction. Defs.' Opp'n at 6–7. Plaintiffs insist that defendants'

argument "holds no water," because cases in this jurisdiction permit such reimbursement in IDEA cases. Pls.' Reply at 12. Ultimately, however, the court need not determine the propriety of reimbursing travel-related expenses because defendants fail to cite a single instance where plaintiffs actually sought reimbursement for such travel time. In neither their opposition nor in their list of specific objections do defendants provide the court with any particularized occasion on which plaintiffs seek reimbursement for travel time. While plaintiffs may actually have sought reimbursement for travel time, defendants bore the burden of identifying such instances and bringing them to the attention of the court. Because defendants failed to meet this burden, the court therefore rejects this argument.

      c. <u>Remote charges</u>

Additionally, DCPS contends that a number of charges predate the administrative hearing by such an extended period of time that the court should determine that they lack "a meaningful relationship with that hearing." *Czarniewy v. Dist. of Columbia*, 2005 U.S. Dist. LEXIS 5161, at *12 (D.D.C. Mar. 25, 2005). Here, unlike in *Czarniewy*, plaintiffs tie each charge to a subsequent hearing and explain that it often takes up to a year for an administrative IDEA case to be resolved. The court agrees with plaintiffs and concludes that the time spent over the course of a year for a particular client is not necessarily too remote, but is instead "an entirely reasonable window of time to be engaging in productive work that will result in a favorable administrative decision." Pls.' Reply at 13.

      d. <u>Duplication of fees</u>

Next, DCPS seeks to have the amount owed to plaintiffs reduced because both Eig and Iseman assertedly attended the due process hearing for Benjamin Lax, thereby making their

claims for reimbursement duplicative. Defs.' Opp'n at 7–8. In making this argument, defendants misrepresent the evidence, for it is clear from plaintiffs' exhibits that Iseman never attended the due process hearing for Lax. *See* Compl., Ex. 3B. Accordingly, this argument is rejected.

### *5. Objections to Vague and Inadequate Descriptions*

Finally, DCPS argues that "virtually all of the invoices are vague and insufficiently detailed," Defs.' Opp'n at 8, and insist that every exhibit "is rife with just the type of vague and unexplained references the courts have condemned." *Id.* at 9. Despite the purported extensiveness of the problem, defendants cite to only seven specific examples of "ambiguous" billing in their list of specific objections, totaling $5,805.[7] In citing these particular examples, DCPS again fail to provide anything other than *ipse dixit* that these billing descriptions are ambiguous. Having reviewed each of the entries to which defendants object, the court concludes that plaintiffs documentation are in fact sufficiently detailed such that the court can determine "'with a high degree of certainty' that the hours billed were actually and reasonably expended, that the hourly rate charged was reasonable, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing." *Blackman v. Dist. of Columbia*, 397 F. Supp. 2d 12, 14 (D.D.C. 2005) (quoting *In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989)).

---

[7] Specifically, DCPS objects to the vague time entries submitted in connection with the following plaintiffs: Andre Fontenot—$1,715; Phillipe Fontenot—$1,050; Alexander Friedman—$1715; Charlotte Girardi—$400; Jamal Jackson—$150; Bigsby Jensen—$375; and Julia Jenson—$400. *See* Defs. Opp'n, Ex. 1.

**D. Summary and Conclusion**

Plaintiffs seek $153,201.49 in unpaid expenses from DCPS. Based on the foregoing analysis and the resulting calculations, the court deducts from this amount $33,846.07 for non-reimbursable expert expenses, $8,540 for non-reimbursable expenses related to IEP meetings, and $132.82 for expenses related to paralegals, for a total reduction of $42,518.89—approximately 15% of plaintiffs' original fee request. Accordingly, the court will order DCPS to pay the remainder of plaintiffs' attorneys' fees, in the sum of $110,682.60.[8] An appropriate order accompanies this memorandum.

> Henry H. Kennedy, Jr.
> United States District Judge

Dated: July 12, 2006.

---

[8] The District correctly states that its ability to pay any award is currently subject to a congressional limitation of $4,000 under the District of Columbia Appropriations Act. Defs.' Opp'n at 10. The D.C. Circuit, however, has held that Congress "did not use [the Appropriations Act] to limit the power of federal courts to award fees under IDEA." *Calloway v. District of Columbia*, 216 F.3d 1, 12 (D.C. Cir. 2000); *see also Blackman v. Dist. of Columbia*, 145 F. Supp. 2d 47, 50 (D.D.C. 2001) (statutory cap does not limit the Court's authority to award reasonable attorney's fees," although it "may limit the District's ability to pay the full amount of the fees awarded in a given fiscal year . . .").